**BRINKER, Clerk of Circuit Court v. MERRILL, et al.**

No. 73-30556.

Circuit Court, Dade County.

February 26, 1974.

Gus Efthimiou, Jr., Miami, for the plaintiff.

Theodore M. Trushin, Miami Beach, for defendants Clark Merrill, et al.

Stuart L. Simon, County Attorney, for defendant County Commission.

Daniel P. S. Paul, Miami, amicus curiae.

FRANCIS X. KNUCK, Circuit Judge.

This cause came on to be heard and considered by the court on the complaint of the plaintiff, Richard P. Brinker, as the clerk of this court and the person required to take certain actions during the course of an attempt to recall several members of the board of county commissioners of Dade County, pursuant to §7.02 of the county's charter, by defendants Clark Merrill, William D. Mitchell, Theodore M. Trushim, Eilleen Chafetz, Phoebett Rice and Al Hanson, collectively referred to hereafter as the "metro recall committee." The plaintiff, being in doubt as to the proper performance of his duties under the charter, seeks guidance from the court in the form of a declaratory judgment in an actual controversy pursuant to Chapter 86, Florida Statutes. The uncontested facts as adduced through the pleadings are stated in the subsequent paragraphs.

The metro recall committee is composed of circulators of recall petitions and their purpose is to collect sufficient valid signatures on these petitions to require county wide elections to be held on whether certain county commissioners should be recalled from

office. The members of the committee circulated petitions approved as to form and legal sufficiency for 30 days and then filed these petitions with the plaintiff clerk. None of the petitions filed relating to individual county commissioners contained 10,000 signatures. The pertinent language in the county charter states —.

> "The person or persons circulating the petition shall, within one month of the approval of the form of the petition, obtain the signatures of voters in numbers at least equal to . . . 10,000, . . ."

> "The signed petition shall be filed with the board which shall within 30 days order a canvass of the signatures thereon to determine the sufficiency of the signatures. If the number of signatures is insufficient or the petition is deficient as to form or compliance with this section, the board shall notify the person filing the petition and allow 30 days for filing of additional petition papers, at the end of which time the sufficiency or insufficiency of the petition shall be finally determined."

The members of the metro recall committee maintain that, even though they did not collect 10,000 voter signatures during the month in which they collected signatures, they are nevertheless entitled to a further 30 day period in which to collect signatures because of the last sentence quoted from the charter provision. They also contend that they should be granted a further 30 days in which to collect voter signatures on their petitions because the county's policy up until November 16, 1973 had been to grant petitioners a period of 60 days in which to collect the 10,000 required for an election, regardless of the number of signatures collected in the first 30 day period; they argue that the county and the plaintiff clerk are estopped by prior inconsistent positions from taking the new position that 10,000 signatures must be collected in the first 30 days, and further that to require them to gather 10,000 signatures within a 30 day period while other petitioners were previously granted 60 days constitutes an invidious discrimination against the members of the metro recall committee.

The court reviewed the aforesaid complaint of the plaintiff clerk, the answer of the defendant board of county commissioners, the answer and cross-claim of the defendants who comprise the metro recall committee, the answer to the cross-claim and reply to affirmative defenses filed by the board of county commissioners, the reply to the affirmative defenses filed by the plaintiff clerk, and the pleadings filed by amicus curiae Daniel P. S. Paul. The court also heard and considered oral argument submitted by counsel for all parties and the amicus and, being otherwise fully advised in the premises, does hereby issue the following declaratory judgment and decree —

1. This suit properly seeks judicial relief in the form of an answer to a question in which there is substantial community interest by a public official who is in doubt as to the proper conduct of his duties. He is entitled to the declaratory relief he seeks in this actual controversy.

2. The court has jurisdiction over all parties to the controversy, all of whom are properly before the court.

3. A petitioner in an initiative or recall proceeding must obtain the signatures of at least 10,000 persons before a canvass should be conducted and the petitioner granted a further thirty days to collect additional signatures.

Subsection 7.01 (2) of the county charter, which deals with initiative, recites —

> "The person or persons circulating the petition *shall,* within one month of the approval of the form of petition, obtain the signatures of voters in numbers at least equal to ... 10,000 ..."

The word "shall" is generally deemed mandatory and synonymous with the word "must". Neal v. Bryant, 149 So.2d 529 and Brooks v. Anastasia Mosquito Control District, 148 So.2d 64. The court therefore feels that the obtaining of the signatures of 10,000 persons in the month following the approval of the petition as to form constitutes a prerequisite step to the survival of the petition.

It can certainly be argued that, because of the phrase "if the number of signatures is insufficient", a person collecting only 5,000 signatures during the month following the approval of the petition as to form can be permitted a further 30 days to obtain additional signatures. The court does not believe such an interpretation to be compatible or consistent with the quoted portion of subsection 7.01 (2) which requires the obtaining of at least 10,000 gross signatures during the first month following approval of the petition as to form. The purpose of the additional 30 day period for gathering further signatures appears to the court to permit the petitioner who submits 10,000 or more gross signatures during the initial month but has less than 10,000 valid signatures remaining after the initial canvass of the petitions and signatures is completed, to have a further 30 day period to obtain a total of at least 10,000 valid signatures during the two separate periods of signature collection.

The court's duty is to reconcile seemingly conflicting provisions in the county charter before declaring one to be of no effect or paramount to the other. Were the court to hold that the metro recall committee had 60 days in which to gather 10,000 signatures rather than 30 days, it would render the first sentence in the above quoted charter provision wholly meaningless. By requiring the obtaining of at least 10,000 gross signatures during the first 30 days

and 10,000 valid electors' signatures during the 60 days of signature collecting, the court reconciles any seeming differences in the two charter provisions and gives meaning and significance to both.

The court is also required to construe the charter provisions in a way that will produce a logical rather than an absurd result. In this case it will be readily apparent that a petitioner who gathers only one signature during the first month following approval of the petition as to form is not intended to be afforded a further 30 day period in which to supplement the single signature gathered with a further 9,999 signatures.

4. The plaintiff clerk and the defendant board of county commissioners should not be estopped from interpreting the charter correctly merely because prior interpretations of the charter provisions involved in this cause were erroneous, in this court's opinion. To perpetuate the errors of the past because of the estoppel argument would mean in effect that an error could never be corrected, and this is not the purpose of the estoppel doctrine. Further, estoppel should never be invoked against a governmental entity or public officer except in the most unusual circumstances (See North American Co. v. Green [1969 Fla.] 120 So.2d 603; Greenhut Construction Co. v. Henry A. Knott, Inc. [1971, Fla. App.] 247 So.2d 517; and Dade County v. Bengis Associates [1972, Fla. App.]), and those circumstances do not appear to the court to be present here.

5. In the circumstances of the instant case the court can find no such invidious discrimination practiced against the members of the metro recall committee as would warrant a perpetuation of the error previously committed when petitioners in other situations were granted 60 days in which to gather 10,000 signatures. The charter language is clear and was readily available to those defendants who comprise the metro recall committee.