FERGUSON, Judge.
By an Emergency Petition for a Writ of Mandamus, Calder Race Course seeks an order directing respondent to issue a license authorizing it to conduct a racing meet during the summer thoroughbred racing season opening May 30, 1983 and closing November 10, 1983.[1]
The Division of Pari-Mutuel Wagering (hereinafter the “Division”) responds: (1) the duty to assign racing dates belongs to the Florida Pari-Mutuel Commission which is not a party to this proceeding, (2) dates cannot be assigned for the summer thoroughbred racing season until dates are fixed for commencement of the 1983-84 winter thoroughbred season, (3) the controlling statute, Section 550.081, Florida Statutes (1981), has been declared unconstitutional by the Fourth District Court of Appeal in Hialeah, Inc. v. Gulfstream Park Racing Association, 428 So.2d 312 (Fla. 4th DCA 1983). In its response, the Division admits that the application of Calder to conduct 1983 summer thoroughbred racing was timely and that no other track in Dade or Broward County has applied to conduct racing during that period.
The response to the petition fails to state a legal defense. It was conceded at oral argument that as a matter of long standing practice any application for racing dates is addressed to the Division, which is empowered to carry out the provisions of the racing statute,[2] and never to the Commission. Even if the exact dates for commencement and ending of the summer thoroughbred racing season cannot be precisely determined at this time, those dates can be fixed in accordance with Section 550.41(1), Flori *105 da Statutes (1981) to a reasonable certainty,[3] without reliance upon Section 550.081.[4]
Where an applicant for a permit to conduct horse racing meets all the requirements, conditions and qualifications set forth in Chapter 550, the duty to grant the permit is mandatory and not discretionary. Section 550.02(6), Fla.Stat. (1981). See Florida State Racing Commission v. Bourquardez, 42 So.2d 87, (Fla.1949), cert. denied, 45 So.2d 876 (Fla.1950); Brooks v. Anastasia Mosquito Control District, 148 So.2d 64 (Fla. 1st DCA 1963). The Division of Pari-Mutuel Wagering, which is obligated to issue a license for summer thoroughbred horse racing on or before March 1 of each year,[5] failed to issue such license by March 1, 1983.
The writ of mandamus is granted.
NO MOTION FOR REHEARING SHALL BE ENTERTAINED.

. This court’s jurisdiction is based on Fla.R. App.P. 9.030(b)(3) and 9.100(b).

. Section 550.02, Fla.Stat. (1981).

.Section 550.41(1), Florida Statutes (1981) authorizes the issuance of a permit for 120 days of summer thoroughbred horse racing to be conducted during the period beginning on May 6 and ending on or before November 12 of each year, exclusive of Sundays. On January 21, 1982, the Commission had awarded to Calder Race Course the 21-day special racing period, beginning May 5, 1983 and ending May 28, 1983, in accordance with Section 550.081(2), Florida Statutes (still valid at the time), which requires the special racing period to begin the day after the conclusion of the third period of winter racing. No conflict exists between these dates already set for the special racing period and the date of May 30, 1983, requested by Calder Race Course as the opening date of the 1983 summer thoroughbred racing season. Furthermore, the setting of November 10, 1983 as the closing date of that season complies with Section 550.41(1).

. Section 550.081, Florida Statutes (1981) has been declared unconstitutional, prospectively, insofar as it delegates power to the Pari-Mutuel Commission to allocate racing periods to competing tracks without legislative guidelines. Hialeah, Inc. v. Gulfstream Park Racing Association, supra.

. Section 550.43, Fla.Stat. (1981) provides:
... On or before March 1 of each year, the Division of Pari-Mutuel Wagering shall issue a license authorizing the permitholder to conduct a racing meet during the summer thoroughbred racing season, during the period and for the number of days set forth therein. .. .