MAY, J.
The defendant appeals his conviction and sentence for carrying a concealed weapon and possession of a firearm after being adjudicated delinquent. He argues the trial court erred in certain rulings, thereby depriving him of a fair trial. We agree in part and reverse.
The charges arose from a tip by a confidential informant that a young man possessed a gun at a Fort Pierce parking lot. The tip indicated that the man wore a black tee shirt, blue jeans, and a blue baseball cap. A detective relayed the information to another officer, who drove to the location with a back-up officer following behind. The two police cars pulled into the parking lot behind a blue Chevy Caprice where three men stood next to the driver’s door.
Before putting his car in park, the lead officer saw the defendant reach for his front waistband, pull out a gun, open the driver’s door, and throw the gun in the car. The lead officer reached for his service pistol and ordered the men to get down.
The back-up officer searched the three men, but did not find the gun. The lead officer told the back-up officer the defendant had thrown the gun in the car. When the back-up officer opened the door to retrieve the gun, he discovered a young woman sitting in the front passenger seat.
The defendant was arrested and charged with carrying a concealed weapon and possession of a firearm after being adjudicated delinquent. The State listed the female passenger as a witness, but she failed to appear for her defense deposition in response to a subpoena or a resulting order to show cause issued by the trial court.
At trial, the defendant twice objected to discovery violations, at which time the trial court unilaterally undertook a Richardson[1] analysis. The trial court later restricted defense counsel’s cross-examination of the female passenger, and disallowed defense counsel from arguing its position on a motion to suppress. We find the trial court’s limitation on defense counsel’s cross-examination of the female passenger reversible *919 error, but also write to comment on the overall handling of this trial.
The first issue arose just after jury selection. The State advised the trial court of the need to substitute a witness due to the unavailability of another listed witness. The State explained that, although the lack of a permit was not an element of the charged crimes, defense counsel’s questions during voir dire gave the jury the impression the defendant had the right to carry a firearm. The State needed the witness to testify that the defendant did not have a permit to carry a concealed firearm. Defense counsel objected and requested a Richardson hearing.
Without hearing argument from counsel on the Richardson analysis, the trial court found a discovery violation, but that it was inadvertent, trivial, and did not affect the defendant’s ability to prepare for trial.
I’ll accept it [at] face value that whether or not a person has a concealed weapons permit is not an element of the crime charged, and [Defense counsel’s] questions during Voir Dire might have caused you to amend ... so I’ll find it inadvertent. Whether it was trivial or substantial, in my mind it’s ... it’s fairly trivial because it doesn’t relate to ... an element of the offense, but ... might be used to negate a ... possible ... affirmative defense....[] Whether you’ve been prejudiced in being able to properly prepare for trial. The exclusion of evidence is the most harsh, draconian remedy available under the law, and the Court must consider less drastic alternatives_If it was done mid-trial there [would] be a problem. [ ] No one’s committed to any theory of defense, no one’s made any irrevocable statements or assertions in opening that would ... cause prejudice.
After announcing its findings, the trial court gave defense counsel an opportunity to speak with the witness.
The second Richardson issue concerned the female passenger’s failure to appear for the defense deposition. Defense counsel argued that the female passenger’s failure to appear constituted a discovery violation and warranted her exclusion. Once again, the trial court single-handedly conducted the Richardson analysis.
THE COURT: Okay, well I don’t know that it’s a Richardson violation insofar it’s not that the State did something in failing to fulfill its obligations under 3.220, but I still think the third prong of Richardson is instructive and analogous, and that’s the prejudice prong regarding the witness fail[ing] to appear at a deposition. And the remedies always ... I mean it’s so easy to say, “Exclude Evidence, Exclude Witnesses.” Understanding the case law that I’m bound and obligated to follow says that is the [ ] harsh[est] draconian remedy available under the law that should be the absolute last resort. The existence of [the female passenger] has been known since day one in this case.... The ... rather than exclude evidence I would ... certainly give you time to talk to her. The fact that she failed to appear at a deposition in and of itself would not support the harsh remedy exclusion of evidence under State versus Consman (phonetic) the Courts’ noted properly that the right to take a deposition is not a Constitutional right.... I’ve heard nothing [] ... that would suggest to me that the harsh remedy of exclusion is necessary. But what I will do is, I will take a recess to give you a chance to talk to [the female passenger]. I’m not even go[ing][to] put a time limit on it, you just come get me when you’re ... when you’ve had a chance to talk to her.
*920 We find no error in these ultimate rulings, but we do not condone the trial court’s unilateral manner in addressing Richardson.
“Once a trial court has notice of an alleged discovery violation, the trial court is obligated to conduct a Richardson hearing.” Lewis v. State, 22 So.3d 753, 757 (Fla. 4th DCA 2009). When an adequate Richardson hearing is conducted, we review the trial court’s decision to admit the evidence for an abuse of discretion. Wiltzer v. State, 756 So.2d 1063, 1066 (Fla. 4th DCA 2000).
[T]he court’s discretion can be properly exercised [o]nly after the court has made an adequate inquiry into all of the surrounding circumstances. Without intending to limit the nature or scope of such inquiry, we think it would undoubtedly cover at least such questions as whether the state’s violation was inadvertent or wilful [sic], whether the violation was trivial or substantial, and most importantly, what effect, if any, did it have upon the ability of the defendant to properly prepare for trial.
Ramirez v. State, 241 So.2d 744, 747 (Fla. 4th DCA 1970).
Here, the trial court short-circuited the Richardson hearings in both instances. Without allowing an opportunity for the defense to state its position, and without asking the State any questions, the trial court single-handedly addressed the issue. This is not the procedure required by Richardson.
The role of a trial court is to be a neutral arbiter and to rule on issues presented to it. It is not the role of the trial court to be prosecutor, defense counsel, and arbiter. While we find no error in the ultimate outcome of these issues, the trial court should allow the parties to play their roles in the proceedings and the court should restrict itself to conducting an adequate inquiry into the surrounding circumstances so that it can rule appropriately.
The defendant next argues error in the trial court’s limitation on defense counsel’s cross-examination of the female passenger. It is this error which causes us to reverse.
The State suggests the issue was unpreserved because defense counsel did not proffer the questions to be asked. We disagree. The defendant attempted to ask the female passenger about her failure to appear for a deposition even when the trial court ordered her to appear. Defense counsel advised the court that the questions would show the female passenger’s motive, bias, and lack of trustworthiness. We find that defense counsel sufficiently preserved the issue. See Coxwell v. State, 361 So.2d 148, 151-52 (Fla.1978).
“The trial court has broad discretion in determining the relevance of evidence and such a determination will not be disturbed absent an abuse of discretion.” See Heath v. State, 648 So.2d 660, 664 (Fla.1994). That discretion is limited by a criminal defendant’s Sixth Amendment right to confront his accusers. See Steinhorst v. State, 412 So.2d 332, 337 (Fla.1982).
 “Any party, including the party calling the witness, may attack the credibility of the witness by ... [s]howing that the witness is biased.” § 90.608(2),. Fla. Stat. (2008). A party has the right to “inquire into matters that affect the truthfulness of the witness’ testimony.” Chandler v. State, 702 So.2d 186, 195 (Fla.1997). And, “[o]ur evidence code liberally permits the introduction of evidence to show the bias or motive of a witness.” Gibson v. State, 661 So.2d 288, 291 (Fla.1995).
Here, the defendant’s Sixth Amendment right to confront the female passenger was violated. The defendant *921 should have been permitted to cross-examine the witness about her failure to appear for the defense deposition and in response to the subsequent rule to show cause. This information was relevant to show her bias and motive to testify for the State. Accordingly, the trial court abused its discretion in prohibiting the defendant from questioning the witness on this subject.
Lastly, the defendant argues that his due process rights were violated when the trial court prohibited defense counsel from arguing the motion to suppress. “Fundamental to the concept of due process is the right to be heard which assures a full hearing, the right to introduce evidence at a meaningful time and in a meaningful manner, and judicial findings based upon that evidence.” See Hinton v. Gold, 813 So.2d 1057, 1060 (Fla. 4th DCA 2002).
Here, while defense counsel was permitted to cross-examine witnesses concerning the motion to suppress, the trial court allowed defense counsel only to proffer applicable case law. At that point, the court abruptly interjected its own analysis.
THE COURT: [] I mean this isn’t even a ... I don’t need argument.
It’s not even a close call. [ ] Babtiste [v. State ] [ ] was a case involving an anonymous tip, here it was the info came to law enforcement from a confidential informant who is known to law enforcement. The Detective, the information was relayed to his fellow officers’ that this information was, there’s a firearm, but what ... whether it’s [an] anonymous tip, or confidential informant I think the most distinguishing features in Babtiste [ ] the majority writes, “During the hearing on the Motion to Suppress, Officer Ellison (phonetic) testified that when she arrived at the scene, she did not observe Babtiste waiving [sic] or carrying a firearm, or engaging in any suspicious behavior. Officer Ellison (phonetic) further testified, “That Officer Willems (phonetic) the first officer to arrive at the scene did not indicate that Babtiste had engaged in any observed suspicious behavior.” This case is completely distinguishable, in this case they had information that he hád a firearm .... I think Babtiste [ ] is completely distinguishable, therefore I don’t have to necessarily criticize the decision, but as you know I was a Captain in the United States’ Marine Corp., and I have a more than a passing familiarity of what constitutes sound tactics if you want to remain alive. And I think Judge Justice Wells, and Bell in their dissent are ... absolutely right both tactically and legally. I think Justice Ansted and Perianti (phonetic) are very smart people, but I think they would have a life expectancy that could be measured in seconds, if they were law enforcements out on the mean streets of liberty city at 3 in the morning. It’s easy to kind of second guess law enforcement when you sit in the rarefied atmosphere of an Appellate Court where everyone that’s come into the building has gone through a metal detector, been subject to screening and wanding, and then you go into the courtroom and they’re, they are surrounded by armed Marshals or Deputies to sit back and say, “Well you should just go up and have a chat with these folks’.” Like I said, these people would be dead if they followed those kind of tactics. And I think Justice Wells and Justice Bell hit the nail on the head when they say, and again I’m citing the dissent, but the case I think even the main decisions are “The majority of the opinion is incorrect and incomplete because after determining there was a violation of the Fourth Amendment the majority fails to consider the appropriateness of the exclusion *922 ary rule.” Here I find no violation of the Fourth Amendment. This case is completely distinguishable, he was reaching for a gun in his waistband, and actually tossed the firearm away. He’s lucky he’s sitting here arguing a Motion to Suppress, rather than having been zipped up in a body bag that night because the officer would have been justified in using deadly force.... I believe the majority suggested procedure is unrealistic and extremely dangerous to law enforcement officers’ whether it’s a legal [] matter, I can tell you tactically it’s ... a kind of a goofy decision.... I find no violation, I think the law enforcement were completely within their rights in acting as they did.... I will deny the Motion to Suppress, and I will do a written Order as well.
[Defense Counsel]: If I could just say on the record that the Motion was denied without any argument whatsoever from Defense Counsel?
THE COURT: Well, I’ll note that it was [ ] not even a close call.... That the Motion was border line frivolous, and I don’t need argument.
While the Sixth Amendment does not require a criminal defendant to be heard on a motion to suppress, and we expressly do NOT require every motion to suppress be subject to argument from counsel, this trial reflects a consistent series of unnecessary restrictions on this defendant’s right to confront, argue, and present his case. See Herring v. New York, 422 U.S. 853, 868 n. 18, 95 S.Ct. 2550, 45 L.Ed.2d 593 (1975). The courtroom is neither a stage designed for trial judges to editorialize about their interpretation of the law, nor is it a place to express displeasure with higher court rulings. Rather, the courtroom is designed to allow our system of justice to unfold and provide all parties concerned with a fair trial.
For the specific error in the limitation on cross examination, we reverse and remand the case for a new trial. See McDuffie v. State, 970 So.2d 312, 328-29 (Fla.2007). Given the judge’s above-quoted comments pertaining to the defendant being “lucky”, this case shall be assigned to another judge.

Reversed and Remanded.

DAMOORGIAN and GERBER, JJ., concur.

. Richardson v. State, 246 So.2d 771 (Fla.1971).